UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**AMBER PAYNE**, an individual,

    Plaintiff,

v.

**WESTERN MICHIGAN UNIVERSITY**,

    Defendant.

Case No.

Hon.

_____/

## COMPLAINT AND JURY DEMAND

Plaintiff, Amber Payne ("Payne"), by and through her attorneys, for her Complaint against Defendant, Western Michigan University, (hereinafter referred to as "WMU"), states as follows:

## PARTIES

1. Plaintiff, Payne, is an individual who resides in the City of Kalamazoo, Michigan.

2. Defendant, WMU, is a public university located in Kalamazoo, Michigan. WMU is a state entity established and organized under the laws of the State of Michigan, with the authority to sue and be sued in its own name.

## JURISDICTION AND VENUE

3. This Court has original jurisdiction over Payne's claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Pregnancy Discrimination Act ("PDA"), the Pregnant Workers Fairness Act ("PWFA), and the Americans with Disabilities Act of 1990 ("ADA") pursuant to 28 U.S.C. § 1331.

4. The Court has supplemental jurisdiction over Payne's claims arising under the Michigan Elliot-Larsen Civil Rights Act ("ELCRA") and Michigan Paid Medical Leave Act ("PMLA") pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because this case arises from events that occurred in Kalamazoo County, which is in the Western District of Michigan, and Defendant is a resident of this District.

## GENERAL ALLEGATIONS

6. WMU is a public university located in Kalamazoo, Michigan.

7. On April 3, 2023, WMU hired Payne as a custodian, and she began as a probationary employee for the first 100 days of her employment.

8. At the time of her hire, Payne was six (6) weeks pregnant, a fact which Payne did not disclose to WMU at the time of her hire.

9. Payne's job duties as a custodian included, but were not limited to, carpet cleaning, floor care, restroom cleaning, and other projects as assigned.

10. WMU maintains over 50 facilities and buildings. Payne was assigned to work in multiple different buildings, each of which had different cleaning protocols.

11. Payne received insufficient training on cleaning processes when she began working as a custodian for WMU.

12. On April 17, 2023, Payne began experiencing dizziness and severe nausea and vomiting as a side effect of her pregnancy and went to the emergency room.

13. Payne called WMU to use her paid sick time on April 18-20 and provided her supervisor, Ms. Juanita Snell (hereinafter "Snell"), with a doctor's note from her emergency room visit.

14. On April 21, 2023, Payne returned to work and began experiencing hostile and disparate treatment from Snell.  Specifically, Snell began scrutinizing and unfairly criticizing Payne's work, including correcting Payne on areas of Payne's assigned building that Payne had not yet cleaned.

15. On April 24, 2023, Snell reassigned Payne to a building she had never worked in before without reviewing with Payne the buildings protocols, providing her with any training, or otherwise describing the responsibilities and expectations.

16. On May 12, 2023, Snell met with Payne to conduct a 30-day evaluation meeting.

17. During the 30-day evaluation meeting, Snell told Payne that her pregnancy was "inconvenient" and "terrible timing."

18. Snell went on to lecture Payne that she (Snell) never suffered from sickness during her own pregnancy.

19. Snell also provided Payne with a 30-day written evaluation of her employment, which included positive comments: "Amber is learning the skills relative to the job. Amber could improve on detail. She accepts instructions, and gets along well with others and has a good attitude. Amber has poor attendance."

20. In the 30-day written evaluation, Snell went on to provide performance ratings of "unsatisfactory" regarding: (a) the quality of Payne's work; (b) Payne's cooperation and acceptance of instruction; and (c) Payne's attendance record.

21. This meeting left Payne feeling distraught by Snell's inappropriate verbal comments and the written evaluation.

22. On May 15, 2023, Payne called WMU to use sick leave due to severe nausea and vomiting as a side effect of her pregnancy. Payne again provided Snell with a doctor's note excusing her from work for the day.

23. Upon receiving Payne's doctor's note related to her May 15th leave, Snell asked Payne, "What are you going to do about this?" in reference to Ms. Payne's pregnancy side effects.

24. From approximately mid-May 2023 to mid-July 2023, Payne progressed in her work despite ongoing petty and unwarranted criticisms from Snell. During this time period, Snell continued harassing Payne by making unwarranted and petty remarks (e.g., telling Payne to vacuum with two hands instead of one, and criticizing areas she had yet to clean) and moving Payne to new buildings without providing sufficient training. Snell also made threats to Payne that she would not make it through her probationary period.

25. On July 21, 2023, Snell met with Payne to conduct a 60-day evaluation meeting.

26. During the 60-day evaluation meeting, Snell's Snell told Payne not to treat her pregnancy like a disability, and that Payne should look for remedies for the nausea and vomiting.

27. Snell also provided Payne with a 60-day written evaluation of her employment, which included positive comments: "Amber has learned the skills relative to the job. She accepts instructions, and gets along well with others. With more practice Amber will improve on her speed and working more efficiently. Amber is aware of the importance of good attendance."

28. Snell's 60-day written evaluation marked Payne's job performance as "satisfactory" in every category except attendance, which she marked "unsatisfactory."

29. Notably, Payne's only absences and tardies were related to pregnancy sickness for which she used accrued sick time and provided doctor's notes.

30. In the weeks following Payne's 60-day evaluation, Snell continued her harassment and attempts to hamper Payne's job performance by repeatedly moving Payne to different buildings, some of which she was assigned to clean completely alone, without providing any training.

31. On August 17, 2023, at the end of her workday, Payne became very nauseous and sat down to take a break and feel better. A supervisor, (Louis) found Payne sitting down and told her it was not good and that she should stay busy instead of taking the break.

32. On August 23, 2023, Payne was called into Snell's office for a 100-day evaluation meeting. Upon arriving at Snell's office, Payne was told to wait for a Human Resources representative to arrive. Once the representative arrived, Snell handed Payne her written evaluation, which included the following comments: "Amber has been trained and coached on the WMU cleaning processes. Amber does not complete her tasks thoroughly or in a timely maner [sic]. Amber has been found sitting down at not break times [sic] by her supervisors. Amber has poor attendance."

33. In the 100-day written evaluation, Snell went on to provide performance ratings of "unsatisfactory" regarding: (a) the quality of Payne's work;

(b) the quantity of Payne's work; (c) Payne's cooperation and acceptance of instruction; and (d) Payne's attendance record.

34. Payne vocalized confusion during the August 23 meeting as no one had spoken to her about her performance or quality of work since the 60-day evaluation meeting.

35. In response to Payne's comments, Snell handed Payne a pre-signed termination letter (dated August 23, 2023) and told her: "This should clear it up for you."

36. Payne suffered emotional distress from the working environment she endured at WMU, and the ultimate termination, which resulted in significant financial hardship for her and her infant child.

37. Given the late stage of her pregnancy at the time of her termination and the tarnished nature of her employment record due to WMU's discriminatory actions, Payne has been unsuccessful in finding new employment and remains unemployed to date.

38. On or about January 3, 2024, Payne filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), asserting that WMU violated Title VII/the PDA, the ADA and the PWFA by discriminating and retaliating against her on basis of sex and disability (pregnancy).

39. On or about July 22, 2024, the EEOC issued Payne a Notice of Right to Sue letter relating to her Charge of Discrimination under Title VII/the PDA, the ADA, and the PWFA.

## COUNT I:
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e *et seq.* – PREGNANCY DISCRIMINATION

40. Payne incorporates Paragraphs 1 through 39 of this Complaint.

41. Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. § 2000e(k), prohibited WMU from discriminating against Payne because of or on the basis of pregnancy, childbirth, or related medical conditions, as discrimination "on the basis of sex."

42. Payne is a protected individual under the PDA.

43. At all relevant times, Payne was pregnant with her first child.

44. At all times, Payne was qualified for her job at WMU.

45. Payne was subjected to an adverse employment decision when WMU terminated her on August 23, 2023.

46. There is a causal nexus between Payne's pregnancy and WMU's adverse employment decision.

47. WMU violated Payne's civil rights under Title VII and the PDA by discriminating against Payne because of or on the basis of pregnancy, and retaliating

against Payne for engaging in protected activity under the PDA in the following respects:

a. Terminating Payne's employment.

b. Discriminating against Payne with respect to the terms, conditions, or privileges of employment including, but not limited to, taking adverse employment action against and untimely firing Payne because of her pregnancy.

c. Treating Payne differently than employees who were not pregnant.

d. Segregating, classifying or otherwise discriminating against and disparately treating Payne on the basis of her pregnancy.

48. WMU's reason(s) for its adverse employment decision was pretextual in nature.

49. WMU knowingly and deliberately engaged in intentional acts of discrimination and violations of the PDA and further, acted with malice and/or with reckless disregard to Payne's rights under the PDA.

50. As a direct and proximate result of WMU's adverse actions, Payne has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

**COUNT II:**
**VIOLATION OF PREGNANT WORKERS FAIRNESS ACT,**
**42 U.S.C. § 2000gg,** *et. al*

51. Payne incorporates paragraphs 1 through 39 of this Complaint.

52. WMU's conduct as alleged throughout this Complaint was unfair, unlawful, and harmful to Payne.

53. The Pregnant Workers Fairness Act requires employers to provide reasonable accommodations for employee limitations related to pregnancy, childbirth, or related medical conditions.

54. Payne is a protected employee under the Pregnant Workers Fairness Act and WMU has more than fifteen (15) employees.

55. WMU knew of Payne's pregnancy and related side effects requiring her to take sick leave and short rests during her scheduled shifts.

56. Rather than accommodate Payne's needs during her pregnancy, WMU, via Ms. Snell, made derogatory comments regarding Payne's pregnancy and side effects.

57. WMU refused to allow Payne to take short breaks during her work shifts, and instead criticized and threatened her probation for doing so.

58. According to WMU, Payne was terminated in part for poor attendance, but each of Payne's absences or tardies was related to a medical appointment or illness suffered due to her pregnancy.

59. Payne's termination resulted in significant financial difficulty for her and her infant child.

60. As a direct and proximate result of WMU's adverse actions, Payne has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

**COUNT III:**
**VIOLATION OF AMERICANS WITH DISABILITIES ACT,**
**42 U.S.C. § 12112 – FAILURE TO ACCOMMODATE**

61. Payne incorporates paragraphs 1 through 39 of this Complaint.

62. While pregnant, Payne was a disabled person as defined by the Americans with Disabilities Act, 42 U.S.C. §12101, *et. Seq* ("ADA").

63. WMU is an employer as defined by the ADA.

64. Payne's pregnancy substantially limited her ability to do her job when she experienced severe nausea and vomiting.

65. During her pregnancy, Payne was exposed to a discriminatory work environment when she was denied equal treatment and put under a microscope due to her pregnancy.

66. Payne was verbally harassed by her supervisors and eventually terminated.

67. Payne communicated her need to take sick leave for her medical issues related to her pregnancy and was punished for doing so.

68. Payne's supervisor, Ms. Snell, called Payne's pregnancy "inconvenient" and "terrible timing."

69. WMU pretextually claimed that Payne's termination was based on her attendance record and performance issues, but in reality it was based on her need for accommodation due to her pregnancy and side effects.

70. Payne suffered significant financial difficulty as a result of her discriminatory termination.

71. WMU's actions demonstrate willful and/or reckless indifference to Payne's protected rights to be free from disability discrimination.

72. As a direct and proximate result of WMU's adverse actions, Payne has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

### COUNT IV:
### VIOLATION OF MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT, MCL § 37.2202

73. Payne incorporates paragraphs 1 through 39 of this Complaint.

74. WMU was Payne's employer as defined by Michigan's Elliot-Larsen Civil Rights Act, MCL § 37.2101, *et seq.* ("ELCRA").

75. Payne was an "employee" within the meaning of ELCRA. MCL § 37.2102, *et seq*.

76. Payne belongs to a protected class as a pregnant woman.

77. The ELCRA makes it unlawful for WMU to discriminate against employees or applicants for employment on the bases of religion, race, color, national origin, age, sex, height, weight, or marital status. M.C.L. § 37.2202.

78. During Payne's employment with WMU, she was pregnant.

79. Payne's sex and pregnancy were factors in WMU's decisions, actions, treatment, conduct, and attitude towards Payne, including but not limited to creating a hostile and offensive work environment.

80. WMU took adverse employment action against Payne when it terminated her employment on August 23, 2023 based on her pregnancy and sex.

81. WMU failed to screen and place in supervisory positions, persons who would be capable of being competent and law-abiding supervisors, with particular reference to enforcing laws against discrimination in the workplace.

82. WMU failed to properly educate and train its employees and supervisors, particularly with regard to the unlawfulness of discrimination in the workplace.

83. Payne suffered damages as a direct and proximate result of WMU's violation of ELCRA, including but not limited to a loss of compensation, loss of past and future employment income and fringe benefits, and non-economic damages for physical, mental and emotional distress.

## COUNT V:
## VIOLATION OF MICHIGAN'S PAID MEDICAL LEAVE ACT,
## MCL 480.961, *et seq.*

84. Payne incorporates Paragraphs 1 through 39 of this Complaint.

85. Michigan's Paid Medical Leave Act ("PMLA") requires employers to allow employees to use paid medical leave for physical illness, injury, health condition, medical diagnosis, care or treatment.

86. WMU is an employer under the statue as it maintains at least 50 employees.

87. Payne accrued medical leave while employed by WMU and used that time for physical illness and treatment of severe nausea and vomiting caused by her pregnancy.

88. Payne provided notice and documentation of her use of medical leave to WMU.

89. WMU violated Payne's rights under the PMLA by retaliating against her for using her medical leave.

90. As a direct and proximate result of WMU's adverse actions, Payne has suffered damages, including but not limited to loss of past and future income and employee benefits, mental anxiety and emotional distress, and loss of professional reputation.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff requests relief and damages as follows:

a. A declaratory judgment that Defendant violated the PDA, PWFA, ADA, ELCRA and PMLA thorough its discriminatory treatment and ultimate termination of Plaintiff;

b. A grant of monetary judgment in favor of Plaintiff and against Defendant awarding all economic, liquidated, compensatory and punitive damages available under the law;

c. Attorneys' fees and costs incurred by Plaintiff in filing this action to the extent allowed by law;

d. Award of pre- and post-judgment interest to Plaintiff on all damages; and

e. Any other legal or equitable relief the Court deems appropriate.

Date: August 6, 2024                     Respectfully submitted,

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, MI 49007
Tel: (269) 250-7501
jyoung@sommerspc.com

Paulina R. Kennedy (P84790)
SOMMERS SCHWARTZ, P.C.
One Town Square, 17th Floor
Southfield, Michigan 48076
Tel: (248) 355-0300
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the Proposed Collective*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2024, I electronically filed the foregoing document with the Clerk of the Court using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
SOMMERS SCHWARTZ, P.C.